## HUEBSCHMAN v. CHARLES OF THE RITZ, Inc.
### No. 4833.

District Court, E. D. New York.
Jan. 22, 1931.

Hoguet & Neary, of New York City (Daniel L. Morris, of New York City, and Ralph L. Chappell, of New York City, of counsel), for plaintiff.

Kenyon & Kenyon, of New York City (Theodore Kenyon and Richard K. Parsell, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a trade-mark infringement suit wherein the plaintiff alleges the infringement of the word "Ritz" as a trade-mark applied to toilet articles and preparations. The mark was registered by the plaintiff on an application filed in the United States Patent Office on June 24, 1924, certificate No. 194,-807 issuing to the plaintiff on February 10, 1925.

From the facts adduced at the trial, it seems that the plaintiff established his present business of manufacturing and selling various toilet preparations some time in 1922, and adopted the trade-name "Ritz." After early sales made in Brooklyn, and shortly after in Manhattan, the plaintiff made sales in New Jersey. Some time after 1922 his business spread to other states, and, so far as it is necessary to advert to the size of the business, it is sufficient to state that it increased from about $4,000 in 1922 to a gross business in 1929 of $160,000. The plaintiff has done some advertising by circulars in newspapers and by radio broadcasting.

From the evidence, I reach the conclusion that, during the time the plaintiff was developing his business, the defendant and its predecessor were developing their business, each without any knowledge of the existence of the other. Until notice of infringement was sent to the defendant, there is no reason to believe that the defendant or its predecessor, Charles Jundt, knew of the existence of the plaintiff's business. Their use of the word "Ritz" was entirely independent of the plaintiff's adoption and is clearly explained as innocent.

The history of this use goes back to 1912, when the word "Ritz" was adopted as a trade-mark by one Charles H. Ritz, who maintained a barber shop in the Ritz Carlton Hotel in the city of New York.

Mr. Ritz made up or caused to be made up toilet articles bearing the name "Ritz." At first, just as did the plaintiff, he confined his sales to New York City. Later, from June 1921, he made shipments of his Ritz hair tonic to various cities in the United States. In addition to the barber shop, Charles H. Ritz, also prior to 1919, conducted a ladies' hair dressing parlor in the Ritz Carlton Hotel. In the latter department he sold preparations known as Ritz cold cream, Ritz cuticle cream, and Ritz hair tonic. In 1919, Charles Jundt, who worked for Charles H. Ritz, purchased from Ritz the ladies' hair dressing establishment, with its equipment and good will. Ever since he has operated it in the Ritz Carlton Hotel. Jundt, acting pursuant to the agreement with Charles H. Ritz, sold cosmetics and toilet articles bearing labels containing the word Ritz. Then in 1926, because for years he had been known to his customers as Charles of the Ritz, he marked his products with that legend and organized the defendant corporation. He had distributed and later the corporation continued to distribute his products in the metro-

politan area and to some extent in other states of the United States.

It may be noted that it is and has been customary for patrons of beauty shops to designate the proprietors and operators by their surnames. Thus it was that Charles Jundt maintaining his shop in the Ritz Carlton Hotel became known, not merely as Charles, but also as Charles of the Ritz, to distinguish him doubtless from other artisans in the same trade, bearing the same surname.

As to the respective rights of the parties, the defendant urges first that the plaintiff, having adopted a proper name as a trade-mark, cannot acquire exclusive rights to such proper name; that his rights, if any, must be limited to the particular mark registered. Any question of a broad property right in the name "Ritz" would accordingly be disposed of. Secondly, the defendant contends that the plaintiff was not the first adopter and user of the name as applied to the class of goods involved, and finally that the name "Charles of the Ritz" does not infringe the registered trade-mark.

I think it clear from the evidence that the plaintiff is not entitled broadly to the name "Ritz" as his trade-mark, and that he must be limited to the mark as registered. The mark as registered consists of the word "Ritz" printed in a distinctive fashion on a black background and circumscribed by irregular ovalshaped scroll work. The use of the name "Ritz" by Charles H. Ritz in his barber shop and beauty shop and by Charles Jundt in his beauty shop, prior to the plaintiff's use, negatives any broad rights which the plaintiff claims.

It is urged by the plaintiff that the prior use of Charles H. Ritz is not such as to invalidate plaintiff's trade-mark. He urges that the limited business done by Ritz could not geographically establish general trade-mark rights in him.

It is argued that the case at bar comes fairly within the case of Jacobs v. Iodent Chemical Company (C. C. A.) 41 F.(2d) 637, 640. In that case Jacobs, the owner of a small drug store, adopted the trade-mark "Iodent" prior to its adoption by the Iodent Company. Jacobs, however, limited his use to the city of Paterson in New Jersey, whereas the Iodent Company had established the mark all over the United States, including the state of New Jersey. Holding that the law of Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713, and United Drug Co. v. Theodore Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141, applied, the court, while sustaining the right of the junior adopter to the rest of the United States, reserved, nevertheless, to Jacobs that portion of his trade in the city of Paterson which he had established. But it must be noted that the court in the Iodent Case reached its conclusion because of the equities involved. The Iodent Company went into the state of New Jersey in ignorance of Jacob's trade-mark and expended efforts and money in establishing and expanding a business. Jacobs knew what that company was doing, and as the court said:

"He stood by and let the Iodent Company occupy territory which was normally his and which, had he exercised proper diligence, could not be wrested from him. Moreover, he not only stood by and watched the Iodent Company develop its trade throughout the State of New Jersey with what he claims, and what the court has found, to be his trade-mark, but he actually assisted in developing its trade by selling the plaintiff's tooth paste bearing his own trade-mark. On the law that trade-mark rights grow out of use, not mere adoption, Hanover Star Milling Co. v. Metcalf, supra, and on the principle recognized in law that there is no property in a trade-mark except as an incident to a business, we are inclined to the view that where, as here, one, owning a valid trade-mark and entitled to a given territory, fails by efforts which are reasonable in time and extent to project his business and the accompanying mark into that territory, he cannot by reason of the mere fact of ownership pre-empt that territory forever. We hold, on the facts, and on the law, bearing on them, that trade-mark rights, like other rights that rest on user, may be lost by abandonment, non-user, laches, or acquiescence, Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 418, 419, 36 S. Ct. 357, 60 L. Ed. 713, that Jacobs is estopped to eject the Iodent Company from the territory of New Jersey which he yielded, to assert trade-mark infringement by its acts and to recover its profits which, for years, he watched grow into potential damages."

Such are not the facts of the present case. Here there is no proof whatsoever that Charles H. Ritz, the senior adopter, ever knew of the existence of the plaintiff's business. Moreover, though his sales were small, they were made in the same territory as that which the plaintiff now seeks to monopolize. The plaintiff cannot prevail because of the greater magnitude of his business. As was said in Ansehl v. Williams (C. C. A.) 267 F. 9, 12:

"The foregoing in a general way is what the evidence shows as to the business done by appellant and appellee. That of appellee was larger than that of appellant, but this fact is not decisive. In the case of Kathreiner's Malzkaffee Fab. v. Kneipp Medicine Co., 82 F. 321, 27 C. C. A. 351, the Court of Appeals of the Seventh Circuit said:

" 'It is not essential that its use has been long continued, or that the article should be widely known, or should have attained great reputation. The wrong done by piracy of the trade-mark is the same in such cases as in that of an article of high and general reputation, and of long-continued use. The difference is but one of degree, and in the quantum of injury. A proprietor is entitled to protection from the time of commencing the user of the trade-mark.' "

The equities of the Iodent Case on which the court so largely based its conclusion are not found in this case. Charles H. Ritz is entitled to go on as he has been doing for years in selling his hair tonic under the designation "Ritz Hair Tonic" and he can continue to mark shipments (even under the decision of the Iodent Case) to such places in other states as he has been in the habit of supplying. It may well be that Charles H. Ritz could not successfully prevent the plaintiff or anybody else from using the name "Ritz" on toilet articles in markets not heretofore sought by him; but that is quite a different thing from asserting that because he could not maintain such exclusive rights the plaintiff can. For the foregoing reasons, I therefore believe the plaintiff's rights must be limited to the specific trade-mark registered.

There remains then for determination whether the registered trade-mark is infringed by the legend, "Charles of the Ritz."

I do not think any confusion exists among the customers who normally use the products of the plaintiff or the defendant. As had been so often said, the purpose of a trademark is to designate origin. On the facts of the case the preparations known as "Charles of the Ritz" designate, not the products of the plaintiff, but clearly those of the defendant. Without invading the rights of the plaintiff, the defendant has in a thoroughly consistent and proper manner developed its own trade-mark in connection with its own business and should be protected therein. United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141.

The defendant may have a decree dismissing the bill. Settle decree upon notice.